IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HELEN M. KALUZA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civil Action No. 11-1646 |
| | ) | United States Magistrate Judge |
| PNC BANK, | ) | Cynthia Reed Eddy |
|     Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendant's Motion For Summary Judgment [ECF No. 21] be granted on all counts.

**II. REPORT**

    **A. Relevant and Material Facts**

Beginning in June 1996 and continuing through the present, plaintiff, Helen M. Kaluza, has been employed by defendant, PNC Bank, with headquarters located in Pittsburgh, Pennsylvania. Ms. Kaluza was initially hired as a grade 14 finance officer in the Staff Services Control Department. Compl., [ECF No. 1 at ¶ 7]; Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 1]. Kaluza received multiple promotions during her tenure at PNC; the alleged ADA and ADEA discriminatory violations occurred after she was promoted to a grade 18, senior property administrator, in the Reality Services Department, in February 2006. Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 3]. Ms. Kaluza was 48 or 49 years old at the time of her promotion to senior property administrator.

As a senior property administrator, Ms. Kaluza's duties included physical property management, management of net occupancy expense, and supervision of third party managers, vendors, and contractors. *Id*. at ¶ 4. Kaluza was assigned to PNC offices located in the USX Tower in Pittsburgh and to PNC's Consumer Loan Center ("CLC"), also in downtown Pittsburgh. *Id*. at ¶ 5. In March 2010, Kaluza's supervisor, Alyssa Berkey, gave her a performance ranking of "Achieves" and authorized a 1.5% raise to her base salary. *Id.* at ¶ 12. Berkey stated in her deposition, and Ms. Kaluza does not dispute, that, subsequent to this review, Kaluza stated that she was interested in pursuing advancement within the Realty Service Department. *Id.* at ¶ 13.

In April 2010, Berkey contacted PNC's Employee Relations Information Center ("ERIC") regarding two absences by Ms. Kaluza and her general work reporting. *Id.* at ¶ 15. More specifically, Berkey was concerned about:

> Kaluza's whereabouts during working hours when gas was shut off in one of the buildings Kaluza manages on or about January 21, 2010 and Kaluza could not be found; about a half day vacation Kaluza took on April 2, 2010 without calling to advise Berkey; and the fact that Kaluza admitted she did not make regular visits to the USX Tower as she was required to do.

*Id.* at ¶ 16.

PNC Employee Relations Investigator Lennette Seibel investigated these matters. Seibel determined that, despite her admissions that she did not notify Berkey of her vacation on the day in question and did not make regular visits to the USX Tower as required, there was no evidence that Ms. Kaluza violated PNC's Code of Business Conduct and Ethics. *Id.* at ¶ 21. Ms. Kaluza received no written warning, demotion, change in salary, or any other adverse employment action as a result of this investigation. *Id.* at ¶ 22.

On or about May 18, 2010, Kaluza was informed by her immediate supervisor, Dean Mills, and Berkey that she was being reassigned from the CLC to One PNC, one of three buildings that comprise PNC's corporate headquarters. *Id.* at ¶ 24. As a part of her reassignment, Kaluza was requested to work from 8:00 a.m. to 5:00 p.m. as opposed to her then-current hours of 6:30 a.m. to 3:00 p.m. *Id.* at ¶ 25. It was at this time, for the first time, that Ms. Kaluza requested an accommodation for her disability.

Ms. Kaluza alleges she developed fibromyalgia in or around 2006 or 2007, informed Berkey of her condition in November 2009, but never requested an accommodation until May 2010. *Id.* at ¶¶ 6, 10, 26. Ms. Kaluza also alleges that as a result of her fibromyalgia, her body aches and her ability to move is limited unless she maintains a strict schedule of sleeping, eating, and exercising. *Id.* at ¶ 6.

In response to Kaluza's request for accommodation, Berkey advised her to contact PNC's Employee Relations to submit an official request, which she did on June 1, 2010. Kaluza was required to have her health care provider complete PNC's Health Care Provider Questionnaire in order to validate that her request was reasonable. *Id.* at ¶ 31. During the interim period, between Ms. Kaluza's request for accommodation and its ultimate approval by PNC, she was permitted to work her requested hours. *Id.* at ¶ 32. The adjusted work schedule was the only accommodation ever requested by Ms. Kaluza. *Id.*

On or around September 21, 2010, Ms. Kaluza received invoices totaling $11,545.70 for renovations to PNC Chief Operating Officer Tom Whitford's office. *Id.* at ¶ 35. In accordance with her job responsibilities, Kaluza attempted to open a project in the "PNC Approves" system to approve and pay the invoices. Ms. Kaluza's attempt to open the project was rejected by PNC Senior Vice President and CFO of Operations, Technology, Corporate Governance, Legal and

Audit, Mike Vallo. Vallo explained to Kaluza that PNC, as recipient of funds from the Federal Troubled Asset Relief Program ("TARP"), adopted and maintained an Excessive or Luxury Expenditure Policy in 2009 and 2010, and that in accordance with the policy, all office renovations exceeding $10,000 required approval by members of the Management Executive Committee. *Id.* at ¶¶ 34, 37.

Ms. Kaluza asked Vallo if she could split up the invoices and charge some of the renovations against the operating budget of the building; Vallo instructed Kaluza not do so as that would be "playing with money." *Id.* at ¶ 38. Kaluza alleges that prior to this conversation with Vallo, neither she nor her fellow property managers were aware of the Excessive or Luxury Expenditure Policy. Plaintiff's Brief In Opposition to Defendants' Motion for Summary Judgment, [ECF No. 25, at 6]. It is instructive to note that Plaintiff's Brief In Opposition relies exclusively upon Kaluza's affidavit to counter the facts marshaled and documented by PNC in its Concise Statement of Material Facts and Appendix. [ECF No. 25, Kaluza Affidavit, Exhibit A]. The affidavit consists only of Ms. Kaluza's denials of PNC's averments and assertions of facts from memory and her subjective viewpoint, with no references to exhibits, documents, deposition testimony or other corroborating evidence.

Following her conversation with Vallo, Ms. Kaluza contacted David Ross, a Financial Manager in PNC's Realty Services Finance Department, who reported to Vallo. Compl., [ECF No. 1 at ¶¶ 56, 57]. Pursuant to Ross's advice, Kaluza paid the invoices despite Vallo's instruction not to do so. Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 41].

Ms. Kaluza's approval of the invoices in contradiction of Vallo's instruction was brought to the attention of Kaluza's supervisor, Berkey, on or around September 23, 2010. *Id.* at ¶ 46. Berkey reported the matter to PNC's ERIC hotline, and Senior Employee Relations Investigator

Jean Olenak initiated an investigation. Following multiple meetings between Ms. Kaluza, Olenak, Berkey, and other PNC executives, Olenak concluded that Kaluza exercised poor judgment that warranted disciplinary action. *Id.* at ¶ 50.

On or around January 18, 2011, despite never receiving any prior discipline, Kaluza was issued a Final Written Warning which stated that she had demonstrated: "(1) '[s]erious lack of judgment in processing invoices associated with the purchase of furniture for a specific project' and 'ignoring a directive from a Senior Finance Manager on how to process the invoices that fell under TARP regulations'; and (2) '[f]ailure to follow call out procedures.'" *Id.* at ¶ 53. In conjunction with the Final Written Warning, Ms. Kaluza was demoted from Senior Property Administrator, grade 18, to Administrative Coordinator, grade 13. *Id.* at ¶ 54. As a result of this demotion, Kaluza's annual salary was reduced from $65,000 to $51,000. Compl., [ECF No. 1 at ¶ 67].

PNC did not fill Kaluza's former position, but instead dispersed her former duties among existing members of the Realty Services Department. Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 56]. While Kaluza concedes that PNC did not fill her former position with a younger worker, she points to the subsequent creation of junior positions within the property management team that were filled by younger, inexperienced employees in the months following her demotion as evidence of age discrimination. Plaintiff's Brief in Opposition, [ECF No. 25 at 7].

Ms. Kaluza alleges that younger, able-bodied employees similarly situated were not disciplined for their role in ordering furniture that resulted in invoices exceeding $10,000. Compl., [ECF No. 1 at ¶¶ 68, 70]. Specifically, Kaluza alleges that fellow Senior Property Administrator Keith Studt charged a $6,830.10 invoice connected with Whitford's office

renovation to One PNC's cost center instead of the cost center associated with Whitford, as Kaluza was told to do. Plaintiff's Brief in Opposition, [ECF No. 25 at 5]. In response, PNC alleges that the other senior property administrators were not similarly situated because they did not engage in conduct in direct contradiction of a supervisor's instructions as did Kaluza, nor did their individual expenditures exceed the $10,000 limit. Defendant's Memorandum in Support, [ECF No. 22 at 6]; Defendant's Concise Statement of Material Facts, [ECF No. 23, at ¶ 66].

Subsequent to her demotion to Administrative Coordinator, Ms. Kaluza applied for three separate promotions within PNC in February 2011, November 2011, and March 2012, and was denied each time. *Id.* at ¶ 80. PNC alleges that Kaluza was denied for the first promotion, in accordance with PNC policy, because she had received a rating of "Fails to Achieve" on her most recent performance review. As to the second position Kaluza applied for, PNC alleges that she was denied the position because she had been in her current position for less than twelve months, as required for internal promotions. The third position Kaluza applied for was filled by a manager outside of her group while she was out on Family and Medical Leave Act ("FMLA") leave. *Id.* at ¶¶ 83, 85, 86.

On or around July 9, 2012, Ms. Kaluza was promoted to Assistant Property Administrator, grade 15; a position she currently maintains. *Id.* at ¶ 61.

Ms. Kaluza alleges that as a result of PNC's conduct, she is and continues to be a victim of age discrimination and disability discrimination. Compl., [ECF No. 1 at ¶¶ 101, 102]. Additionally, Kaluza alleges that she is a victim of retaliation for engaging in a protected activity, i.e., complaining to Berkey and a PNC human resources manager regarding perceived disability discrimination and suffering an adverse employment action within a short proximity of registering her complaint. *Id.* at ¶ 103. Ms. Kaluza seeks reinstatement to her position at the time

of the demotion, Senior Property Administrator, and all other available relief including but not limited to compensatory and punitive damages associated with "willful and malicious violations of federal law." *Id.* at ¶ 104.

### B. Standard of Review for Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a)[1] provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party "cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument," *Berckeley Inv. Group Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to

---

[1] Pursuant to amendments to the Federal Rules of Civil Procedure in December 2010, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c). Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute", this change does not affect the substantive standard or the applicability of prior decisions construing this standard. Fed.R.Civ.P. 56(a) advisory committee's note.

interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. See also *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251–52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the non-moving party." *Pignataro v. Port Auth. Of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

In opposing a motion for summary judgment, the non-moving party may not rest upon "mere allegations of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The requirement to view the facts in the light most favorable to the non-moving party is a "world apart from 'assuming' that general averments embrace 'specific facts' needed to sustain the complaint." *Lujan v. National Wildlife Fed.*, 497 U.S. 871, 888 (1990). A self-serving affidavit contradicting the facts averred by the movant is simply the non-

moving party "dressing up the allegations in the Complaint as statements under oath. And it does so without adding a shred of specificity or detail." *In re DeShazo*, 354 B.R. 720, 725 (Bkrtcy.E.D.Pa. 2006). To rely solely on a self-serving affidavit that lacks any independent probative value contradicts Rule 56(e), the object of which is "not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888.

### C. Burden Shifting Analysis

On a motion for summary judgment in federal employment discrimination cases, the court's analysis is guided by the *McDonnell Douglas* formulation regarding the "appropriate burdens of proof and allocation of production of evidence." *Johnson v. McGraw-Hill Co.*, 451 F.Supp.2d 681, 691 (W.D.Pa. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas* burden shifting analysis, a Title VII complainant carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once a Title VII complainant establishes a prima facie case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employer's adverse action against the complainant. *Id.* Having articulated a legitimate, nondiscriminatory reason for the adverse action, the complainant must then "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Thimons v. PNC Bank*, 254 Fed.Appx. 896, 897-898 (3d Cir. 2007) (citing *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir.2005)). The complainant's claim will not survive summary judgment if she is unable to satisfy the third step of analysis. *Thimons*, 254 Fed.Appx. at 898.

In order for a complainant to survive summary judgment at the third stage of the *McDonnell Douglas* analysis, the complainant must provide evidence to establish that the employer's justification under the second stage of analysis was pretext. *Id.* "[T]he plaintiff must point to some evidence, direct or circumstantial, from which factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644 (3d Cir. 1998).

The *McDonnell Douglas* analysis applied to claims of employment discrimination under Title VII are also applied to claims of employment discrimination under the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). *See, e.g., Colwell v. Rite Aid Corp.,* 602 F.3d 495, 500 n. 3 (3d Cir. 2010); *Matczak v. Frankford Candy and Chocolate Co.,* 136 F.3d 933, 938 (3d Cir. 1997); *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996).

### D. Discussion and Analysis

Plaintiff has failed to adduce genuine issues of material fact necessary to support elements of her discrimination and retaliation claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act, or the Pennsylvania Human Relations Act. Defendant, PNC Bank, is therefore entitled to summary judgment on all claims.

#### 1. Age Discrimination in Employment Act

The ADEA prohibits employment discrimination on the basis of age. 29 U.S.C. § 623. To establish a *prima facie* case of age discrimination, Kaluza must show that she: "is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff;

third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). While Ms. Kaluza suffered an adverse employment action by being demoted and was over 40 years old at the time of the demotion, she offers no evidence to establish that she was qualified for her position or that she was replaced by a person sufficiently younger to raise an inference of age discrimination, or that her demotion had any causal connection to her age.

Under the *McDonnell Douglas* burden shifting analysis, once an employee establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse action taken against the employee. *McDonnell Douglas*, 411 U.S. at 802. PNC alleges that Kaluza was demoted because "her supervisors had lost confidence in her ability to exercise good judgment and continue in the position of Senior Property Administrator, as a direct result of her conduct related to her processing invoices for Whitford's office renovations in contravention of Vallo's clear directive." Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 55]. Having offered supporting evidence to establish legitimate business reasons for Kaluza's demotion, the burden of proof shifts to Kaluza to demonstrate that PNC's reasons were a pretext for unlawful action. *Johnson.*, 451 F.Supp.2d at 691. Kaluza has failed to do so.

To establish pretext, Kaluza must point to some evidence, direct or circumstantial, from which this Court could reasonably either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Thimons*, 254 Fed.Appx. at 898 (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir.1998)). Kaluza

alleges that she suffered an adverse employment action, while younger similarly situated co-workers, Michelle Lydon and Keith Studt, who were involved in purchasing the furniture for the office renovations, did not suffer similar repercussions. Compl., [ECF No. 1 at ¶¶ 60, 61]. However, Kaluza fails to adduce any evidence that the other employees involved in the office renovation were in fact "similarly situated." Compl., [ECF No. 1 at ¶ 68].

In order to establish that Lydon and Studt were similarly situated, Kaluza must demonstrate they all "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *George v. Wilbur Chocolate Co., Inc.*, 2010 WL 1754477 at *4 (E.D.Pa. 2010) (citing *Bullock v. Children's Hosp. of Phila.*, 71 F.Supp.2d 482, 489 (E.D.Pa. 1999)). PNC concedes that no other employee was demoted as a result of the office renovation debacle, but points out that no other employee disregarded an *express instruction* from his or her superior. Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 66]. Kaluza's blatant disregard of an *express instruction* from her supervisor is a sufficient differentiating circumstance to justify PNC's disciplinary treatment of her as opposed to Lydon and Studt. Additionally, all invoices paid by Lydon and Studt were under the $10,000 cut-off. Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 66].

Federal courts are obliged to show substantial deference to an employer's business judgments. *Billet v. CIGNA Corp.*, 940 F.2d 812 (3d Cir. 1991); *Dodge v. Susquehanna Univ.*, 796 F.Supp. 829, 836 (M.D.Pa. 1992). Relating to employment decisions, an employer has the right to make business judgments on an employee's status "particularly when the decision involves subjective factors deemed essential to certain positions." *Billet*, 940 F.2d at 825, 828. Kaluza's admission that she did not follow Vallo's instruction regarding invoices exceeding

12

$10,000 constitutes a reasonable exercise of legitimate business judgment, which insulates the employer's decision from judicial second-guessing.

The fourth prong of an ADEA discrimination claim requires the plaintiff to show that her position was filled by a person sufficiently younger to raise an inference of age discrimination. *Smith*, 589 F.3d at 689. PNC argues that Kaluza's position was not filled following her demotion, but instead her duties were re-distributed among current PNC employees. Defendant's Memorandum in Support, [ECF No. 22 at 9]. A redistribution of duties among current employees does not, without more, constitute a "replacement" of a former employee. *Michniewicz v. Metasource, LLC*, 756 F.Supp.2d 657, 666 (E.D.Pa. 2010) ("A terminated employee is not replaced, however, when another employee is assigned to perform the terminated employee's duties in addition to other duties, or when work is redistributed among other remaining employees already performing related work."). The fact that some of the employees that received some of Kaluza's former duties were younger does not demonstrate discrimination under the ADEA. *Millard v. CoreStates Fin. Corp. et al.*, 2001 WL 1175135 at *2 (E.D.Pa. 2001) ("a person is not 'replaced' for purpose of a *prima facie* age discrimination action where duties are undertaken by a younger person or persons already employed by the Defendant"). Kaluza has not adduced any evidence that her position was filled by a younger person and therefore cannot satisfy the fourth "most important" prong. *Thimons*, 254 Fed.Appx. at 898.

Kaluza has failed to offer material facts to support establish essential elements of her ADEA claim, and there is no dispute of material facts that might cause a reasonable jury to find otherwise. PNC Bank's motion for summary judgment as to this claim should be granted.

## 2. Americans with Disabilities Act

The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, "prohibits covered employers from discriminating against qualified individuals on the basis of their disabilities." *Williams v. Philadelphia Hous. Auth. Police Dept.*, 380 F.3d 751, 755 (3d. Cir. 2004). A "covered employer" is an employer with 15 or more employees active in interstate commerce; PNC is a "covered employer." 42 U.S.C. § 12111. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Williams*, 380 F.3d at 761 (quoting *Gaul v. Lucent Technologies,* 134 F.3d 576, 580 (3d Cir.1998)). While Kaluza alleges, and PNC does not dispute, that she is disabled within the meaning of the ADA because of her fibromyalgia, and is a qualified individual entitled to the ADA's protections, she offers no evidence to support her claim that she suffered an adverse employment decision as a result of disability discrimination.

Assuming, arguendo, that Kaluza's disability in conjunction with subsequent adverse employment action establishes a *prima facie* case, the burden would shift to PNC to show a "legitimate, nondiscriminatory reason" for the adverse action taken against Kaluza. *McDonnell Douglas*, 411 U.S. at 802. For reasons set forth above, Kaluza's actions in approving invoices totaling over $10,000 in direct contradiction of instructions from her superior qualifies as the legitimate, nondiscriminatory business reason for her demotion. Defendant's Concise Statement of Material Facts, [ECF No. 23 at ¶ 55]. Kaluza has not pointed to any material facts that refute

PNC's assertion, and her reliance, almost exclusively, on a self-serving affidavit does not strengthen her argument.[2]

In addition to prohibiting discrimination based on an employee's disability, the ADA requires employers to make "reasonable accommodations" for disabled employees. 42 U.S.C. § 12112(b)(5)(A). The record before the Court demonstrates that PNC did exactly that.

When Kaluza's work schedule was changed, from 6:30 a.m. to 3:00 p.m. to 8:00 a.m. to 5:00 p.m., she requested an accommodation to return to the original schedule based upon her doctor's recommendation. *Id.* at ¶¶ 24, 26. This was the first and only time Kaluza requested an accommodation for her fibromyalgia.

There is no blanket formula to determine what a reasonable accommodation is in a particular case, or whether or not the accommodation has been made; these are case specific questions. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999). In evaluating a failure to accommodate claim, the Third Circuit stated that "courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary." *Id.* (citing *Bultemeyer v. Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). PNC acted in good faith throughout Kaluza's accommodation approval process: PNC's Employee Relations Department considered her request for approximately two months before approving it,[3] and in the interim, permitted her to retain her

---

[2] For example, plaintiff states in her affidavit that "I witnessed Michelle Lydon received better treatment than I from Dean Mills and Alissa Berkey with regard to schedule, call-offs, and time off. She is not disabled." Plaintiff's Brief in Opposition, Exhibit A, [ECF No. 25-1 at ¶ 22]. Plaintiff references no documents, deposition testimony, memos, personnel files, or even any specific facts to support her bare conclusions that a co-worker "received better treatment . . . with regard to schedule, call-offs, and time off [and] is not disabled." The affidavit is not probative as Ms. Kaluza has simply replaced conclusory allegations of her complaint with conclusory allegations of her affidavit. *See Lujan*, 497 U.S. at 888.

[3] PNC required documentation from Kaluza's health care provider, which is permitted and reasonable when an employee's disability is not readily apparent. *Galimore-Roberts v. United Parcel Serv., Inc.,* 2009 WL 1653088, at *11 (E.D. Pa. 2009).

15

original work schedule. *Id.* at ¶¶ 31, 32. In other words, PNC fully accommodated plaintiff's request. For these reasons, Kaluza's failure to accommodate claim should fail.

In addition to Kaluza's discrimination claim under the ADA, she also alleges that her demotion was in retaliation for engaging in a protected activity. Compl., [ECF No. 1 at ¶ 103]. The ADA makes it unlawful for an employer "to coerce, intimidate, threaten, or interfere with any individual" exercising rights protected under the Act. 42 U.S.C. § 12203(b). To establish a claim of retaliation under the ADA, Kaluza must show: "'(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Fogleman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567-68 (3d Cir. 2002) (quoting *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997)).

In support of her claim of retaliation, Kaluza alleges that she engaged in protected activity by complaining of disability discrimination to PNC Human Resources Representative Jean Olenak in October 2010. Am. EEOC Compl., [ECF No. 25-2 at ¶ 60]. While Kaluza may have engaged in a protected activity, the facts do not support that PNC took any adverse action either after or contemporaneous with Kaluza's protected activity, nor do the facts establish a causal connection between Kaluza's protected activity and her demotion.

By Kaluza's own admission, three months passed between her complaining to Olenak and her demotion. *Id.* at ¶¶ 60, 61. In *Williams*, the court found that two months elapsing between an employee engaging in a protected activity and a subsequent adverse employment action was too great of a time period to establish temporal proximity. *Williams,* 380 F.3d at 760. The court held that "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Id.* (quoting *Shellenberger v. Summit Bancorp, Inc.*,

318 F.3d 183, 183 (3d Cir. 2003). Thus, Kaluza's claim of retaliation must fail because the temporal proximity between her protected activity and her demotion is not "unusually suggestive of retaliatory motive" and fails to establish a "causal connection" between the protected activity and the alleged adverse employment action.

Moreover, there was no adverse employment action. As discussed, PNC acted reasonably and in good faith, and fully accommodated Kaluza's work schedule adjustment request. There is nothing on the record to suggest that PNC's accommodation was begrudgingly made, and it is difficult, if not impossible, to glean a discriminatory animus from PNC's conduct in this case.

Kaluza has not raised a genuine issue of material dispute as to essential elements of her ADA claims, and therefore PNC Bank's motion for summary judgment as to said claims should be granted.

### 3. Pennsylvania Human Relations Act

In addition to Kaluza's federal claims, she has asserted parallel claims of discrimination and retaliation under the Pennsylvania Human Relations Act. 43 P.S. §§ 951-963. The same legal standard that applies to the ADA applies equally to discrimination claims under the PHRA, *Kelly,* 94 F.3d at 105, and it is entirely "proper to address [ADEA and PHRA age discrimination claims] collectively." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005).

Therefore as PNC's motion for summary judgment should be granted as to Kaluza's ADA and ADEA claims, so too should summary judgment be granted as to Kaluza's PHRA claims.

### III.    Conclusion

For the reasons stated above, it is respectfully recommended that Defendant's Motion for Summary Judgment be granted on all counts.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, Plaintiff is allowed until March 17, 2013, to file Objections to this Report and Recommendation. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy<br>Cynthia Reed Eddy<br>United States Magistrate Judge

cc: all counsel of record